# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 18-1927-GW(SHKx) | Date | November 19, 2018 |
| Title | *Natasha Salgado v. International Brotherhood of Boilermakers, Iron Ship Builders Blacksmiths, Forgers and Helpers/LDG No. 92, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Katie Thibodeuax | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Aarin A. Zeif | Francisco M.A. Delgado |

**PROCEEDINGS:** PLAINTIFF'S MOTION FOR REMAND TO THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO AND REQUEST FOR ATTORNEY'S FEES [13]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would GRANT Plaintiff's Motion to Remand to San Bernardino County Superior Court. However, the court would DENY Plaintiff's request for costs and attorneys' fees.

| | : | 06 |
|---|---|---|
| | Initials of Preparer | JG |

*Salgado v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, LDG No. 92.*; Case No. 5:18-cv-01927-GW-SHK; Tentative Ruling on Motion to Remand

I.  **Background**

    A. **Factual Background**

Natasha Salgado ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of San Bernardino, against International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Lodge #92 ("Defendant") and Does 1 through 25 for: (1) failure to pay minimum wage, (2) failure to provide itemized statement to employee, (3) failure to pay upon termination or quitting employee, (4) unfair business practices, (4) failure to pay overtime, (5) wrongful termination in violation of public policy, and (6) violation of California Labor Code § 1102.5. *See generally* Plaintiff's Complaint ("Compl."), Docket No. 1-1. All claims are based on California law. Plaintiff alleges the following:

Defendant is in violation of California Labor Code § 1197 and the Industrial Welfare Commission Wage Orders because Plaintiff was not paid minimum wages for all hours worked for Defendant. *Id.* ¶ 7. Defendant also violated California Labor Code §§ 510(a), 1194 and the Industrial Welfare Commission Wage Orders by failing and refusing to pay the required overtime wage premiums for overtime worked. *Id.* ¶¶ 23-25. Defendant is required by law to provide an itemized statement to Plaintiff under California Labor Code § 226. *Id.* ¶ 10. But Plaintiff has suffered injury from never receiving paychecks in violation of California Labor Code § 226. *Id.* ¶ 12. Defendant refused and/or willfully failed to pay all wages owed to Plaintiff at the time of discharge in violation of California Labor Code §§ 201, 202, and 203. *Id.* ¶¶ 15-16. Defendant has engaged in unlawful business practices in violation of California Business and Professions Code § 17200 *et. seq.* by failing to pay proper wages to Plaintiff. *Id.* ¶¶ 19-21.

In addition, Defendant deliberately, intentionally, and wrongfully terminated Plaintiff on the belief Plaintiff had disclosed, would disclose or may disclose information concerning unlawful activity. *Id.* ¶ 29. Defendant violated California Labor Code § 1102.5 by terminating Plaintiff in retaliation for Plaintiff disclosing information or believing that Plaintiff would disclose information concerning unlawful activity. *Id.* ¶¶ 33-35.

Defendant removed the case to this Court on September 10, 2018, asserting the existence of subject matter jurisdiction based on federal question jurisdiction. *See generally* Notice of Removal ("NOR"), Docket No. 1. Defendant argued there was federal question jurisdiction because the Labor Management Relations Act ("LMRA") completely preempts Plaintiff's state law claims. *Id.* Defendant reasoned the existence of a collective bargaining agreement ("CBA") governing Plaintiff's employment and the rights created by it, as well as the need to interpret the CBA, triggers complete preemption such that the Court has subject matter jurisdiction to decide the case. *Id.*

### B. Procedural Background

Pending before the Court is Plaintiff's motion to remand. *See* Plaintiff's Notice of Motion and Motion to Remand Case ("MTR"), Docket No. 13. Defendant opposed the MTR. *See* Defendant's Opposition to Plaintiff's Motion to Remand ("Opp'n"), Docket No. 15. Plaintiff filed a reply. *See* Plaintiff's Reply in Support of its Motion to Remand ("Reply"), Docket No. 17.

## II. **Defendants' Motion to Remand**

### A. Legal Standard – Remand and LMRA Complete Preemption

Generally speaking, "the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Therefore, "[t]he rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* However, there is an exception, known as the "complete preemption doctrine," which applies where "the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has explained, the "preemptive force of section 301 is so

powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). Additionally, the Supreme Court has instructed that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 393 (quoting *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)); *see also Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456 (1957) (noting that section 301 was a congressional directive to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211-12 (1985) (quoting *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 224-25 (1983)) ("If the policies that animate § 301 are to be given their proper range . . . [they] require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.'"). Thus, suits between individuals and their employers sometimes implicate LMRA preemption when a CBA is involved. Once preempted, "any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

In *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007), the Ninth Circuit distilled the history and preemptive scope of section 301 that has been established by the Supreme Court and in this Circuit, and formulated two lines of inquiry to assess whether a defendant can establish complete preemption under the LMRA. The first is an "inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists *solely* as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* (emphasis added); *see Lueck*, 471 U.S. at 212 (holding that section 301 cannot "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract"); *Caterpillar*, 482 U.S. at 394 (concluding that section 301 only "governs claims founded directly on rights created by collective-bargaining agreements"). "[T]o determine whether a particular right inheres in state law or, instead, is grounded in a CBA, the Court has instructed us to consider the legal character of a claim, as independent of rights under the collective-bargaining agreement [and] not whether a grievance arising from precisely the same set of facts could be pursued." *Burnside*, 491 F.3d at 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)) (emphasis added) (internal quotations and emphasis omitted). In addition, the Supreme Court has

3

clearly stated "that reliance on the CBA as an aspect of a *defense* is not enough to 'inject[ ] a federal question into an action that asserts what is plainly a state-law claim.'" *Id.* (emphasis added) (citing *Caterpillar*, 482 U.S. at 398-99).[1]

The *Burnside* Court then identified the second line of inquiry: "[i]f, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on *analysis of* a collective-bargaining agreement.'" *Id.* (emphasis added) (citing *Caterpillar*, 482 U.S. at 394 (quoting *Hechler*, 481 U.S. at 859 n.3 (1987))). "[T]o determine whether a state law right is "substantially dependent" on the terms of a CBA . . . the Court directs us to decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id.* (internal citations omitted). The former does not provide a basis for complete preemption. *See Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). Along these same lines, merely "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).

**B. Analysis**

Plaintiff first argues that because this action does not involve a dispute between an employer and her union, but involves a dispute between an employee and her employer that just so happens to be a union, the action sounds in state law and the CBA does not need to be interpreted. MTR at 5-6. Therefore, Plaintiff argues, her claims are not completely preempted by section 301 of the LMRA and the Court lacks jurisdiction over this matter. *Id.* But actions between employees and employers (whether or not those employers are themselves unions) can still be subject to LMRA preemption. *See, e.g.*, *Caterpillar*, 482 U.S. at 390; *Burnside*, 491 F.3d at 1055.

Unsurprisingly, Defendant argues that each of Plaintiff's seven claims are completely preempted under one or more of the *Burnside* inquiries because even though this action involves a dispute between an employee and her employer (that just so happens to be a union), Plaintiff's employment was still subject to a CBA between Defendant and IUPAT District Council 88/Professional & Clerical Workers Local Union 2348. The Court concludes that it can safely

---

[1] The Court noted the long-established notion that "the plaintiff is the master of the complaint" and reasoned that if the defendant could manipulate "the forum in which the claim shall be litigated" based on the substance of his defense, "the plaintiff would be master of nothing." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987).

4

consider the CBA on this motion because Defendant has asserted in both its NOR and Opp'n that the CBA governs Plaintiff's employment and Plaintiff has not disputed that contention. *See, e.g.*, *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F.Supp.3d 932, 941 (C.D. Cal. 2014); *Kenneth Rothschild Trust v. Witter*, 199 F.Supp.2d 993, 999 n.19 (C.D. Cal. 2002); *cf. Densmore v. Mission Linen Supply*, 164 F.Supp.3d 1180, 1187 (E.D. Cal. 2016). Indeed, Plaintiff admits in her motion that she is a member of a union.

With that in mind, the Court will briefly dispose of Defendant's argument founded upon the first *Burnside* inquiry. Defendant argues that Plaintiff's fifth cause of action for failure to pay overtime wages is completely preempted by section 301 because it seeks to vindicate rights and duties created by the CBA − rights concerning overtime pay. Opp'n at 9-10. Plaintiff contends that none of its seven claims are completely preempted under section 301 because the rights she is attempting to vindicate exist independently of the CBA. MTR at 3-5; Reply at 3-4. In both *Lueck* and *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court "underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law" and the ultimate question is whether the right exists independent of the CBA, not whether recovery under the same set of facts can be pursued under the CBA, "that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 124-25. Here, although Defendant attempts to argue Articles IV and VIII of the CBA grant union members rights to overtime wages regardless of whether they are eligible for overtime wages under state or federal law, that fact is not the controlling consideration. Plaintiff is plainly relying on her right to overtime *under California law* − a right independent of the CBA. Compl. ¶¶ 23, 25. And, Plaintiff's claim is also not predicated on any right she may have, under the CBA, to recover under such a claim. Thus, the Court would find Plaintiff's fifth cause of action for failure to pay overtime wages is not completely preempted under the first *Burnside* inquiry because the rights to overtime wages are conferred by state statute independent of the CBA.

1. <u>Plaintiff's First through Fifth Claims</u>

Plaintiff argues that her claims are not completely preempted by section 301 under the second *Burnside* inquiry either because *Burnside* held the plaintiff's "wage claim would depend on the interpretation of the California Supreme Court case *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 578," her wage and overtime wage claims "would likewise require interpretation under *Morillion*" and—most generally and importantly − they would not depend upon

5

interpretation of the CBA. Reply at 3. Plaintiff also argues that all of her other five claims are not completely preempted by section 301 under the second *Burnside* inquiry because they do not constitute a dispute concerning the meaning of the CBA or concerning the construction of the CBA. MTR at 4-5; Reply at 3-5.

Defendant responds that Plaintiff's first claim for failure to pay minimum wages claim is preempted under the second *Burnside* inquiry because that claim is substantially dependent on interpretation of the CBA. Opp'n at 8. Defendant then argues that Plaintiff's fifth claim for failure to pay overtime wages claim is derivative of Plaintiff's argument that Defendant failed to pay her minimum wages for all hours worked and for the same reasons is completely preempted. *Id.* at 8. Defendant further contends that Plaintiff's second and third claims for failure to provide itemized wage statements and for failure to pay upon termination, respectively, are derivative of Plaintiff's argument that Defendant failed to pay her minimum wages for all hours worked and for the same reasons are completely preempted. *Id.* at 10. Lastly, Defendant argues that Plaintiff's fourth claim for unfair business practices is derivative of Plaintiff's first through third and fifth claims, and is similarly preempted because it relies on interpretation of the CBA. As such, the court will address these claims together.

In making her argument, Plaintiff relies on *Burnside* for the proposition that her claims can be resolved without interpretation of the CBA. In *Burnside*, the Court addressed the Ninth Circuit authorities citied by the parties in that case, *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1066 (9th Cir. 2000) and *Gregory*, 317 F.3d at 1053, to resolve whether the plaintiff's claims were completely preempted by section 301. *Burnside*, 491 F.3d at 1073. The importance for this case lies in the Ninth Circuit's distinction of the two cases.

In *Firestone*, the Ninth Circuit held the employee's overtime claim was preempted by section 301 because "determining whether an employee was receiving a 'premium wage rate' for overtime under a CBA, such that the employer would be exempt from section 510 of the California Labor Code, was a dispute that could not be resolved without interpretation of the agreement," while in *Gregory* the Ninth Circuit held the employee's overtime claim was not preempted by section 301 because the dispute was not over the "method" of calculating overtime but the "result": whether the overtime was paid. *Id.* (citing *Firestone*, 219 F.3d at 1066 and *Gregory*, 317 F.3d at 1053). The *Burnside* Court noted the preemption answer was provided by the Supreme Court in *Livadas*, where the employee never disputed how much her employer owed her but actually

6

disputed the fact that her employer failed to pay her immediately upon discharge, and where the Supreme Court held that "the mere need to 'look to' the collective-bargaining agreement for damages computation is not reason to hold the state-law claim defeated by section 301." *Id.* (citing *Livadas*, 512 U.S. at 125).

In making its argument, Defendant relies on the work week hour and overtime rights provisions in Article IV, Sections 1-2, the overtime wage rate provisions in Article IV, Section 3 and Article VII, Section 1, and the grievance process and binding arbitration provisions in Article XI, Sections 1-4. Opp'n at 8-10. Here, although the Defendant repeatedly cites to language in the CBA that contains the work week hours, wage rates, and overtime rates, Defendant never actually says why the Court would need to *interpret* the CBA or those provisions specifically. Like in *Burnside*, *Gregory*, and *Livadas*, here (at least, according to what the allegations in the Complaint reveal) Plaintiff is not disputing the manner in which the rates are calculated, nor is Plaintiff disputing the meaning of a term in the CBA or the construction of the CBA itself. Plaintiff is disputing the "result": whether she was paid appropriately for all hours worked and for all overtime hours.

Furthermore, the Court is similarly unconvinced by Defendant's argument that the wage and overtime claims are completely preempted under the second *Burnside* inquiry because the grievance and binding arbitration provisions in the CBA will require the Court to interpret the CBA. Opp'n at 7-10. Defendant cites the grievance and binding arbitration provisions but does not attempt to explain why they require this Court to *interpret* the CBA or those provisions in particular. Opp'n at 8-9.

In making its grievance/arbitration-based argument, Defendant relies in part on *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc), *petition for cert. filed*, (U.S. Nov. 2, 2018) (No. 18-579) and *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). In *Schurke*, the Ninth Circuit held that a plaintiff seeking vacation and sick pay under state law was not preempted by the LMRA even though the CBA had to be consulted to confirm the existence of accrued vacation days. *Id.* at 928. The *Schurke* Court reasoned that simply because "a state law cause of action is conditioned on some term or condition of employment that was collectively bargained, rather than unilaterally established by the employer, does not itself create a CBA dispute." *Id.* at 916. Although Defendant cites *Schurke* for support, a proper reading of the case in conjunction with other Supreme Court and Ninth Circuit

7

jurisprudence indicates that it actually stands for the recognized proposition that a state law cause of action that simply *refers* to some term in the CBA does not in and of itself create a dispute about the *meaning or construction* of the CBA.

As noted, Defendant also relies on *Kobold* for the proposition that resolution of the Plaintiff's claims necessarily require an interpretation of the CBA. However, as the Ninth Circuit subsequently noted in *McCray v. Marriot Hotel Servs., Inc.*, interpretation was required in *Kobold*:

> because before the court "could calculate the total *amount* Kobold is owed, it must determine which of the shifts she worked qualified for premium pay." And the definition of which shifts qualified for premium pay *was contained not within the state law under which the action arose*, but rather was based on the terms of the CBA. Because there was a live dispute over the meaning of a particular provision of the relevant CBA, resolving the case would mean that the court "must interpret, not just refer to or look at" the agreement.

902 F.3d 1005, 1012 (9th Cir. 2018) (second emphasis added) (internal citations omitted). Unlike in *Kobold*, where the Court held section 301 preempted the plaintiff's claims because the statute under which the plaintiff's claim arose did not define which shifts qualified for overtime pay, thereby requiring the Court to interpret the CBA, here California Labor Code § 510 provides which hours qualify for overtime pay. The mere fact that the Court may reference the CBA is not sufficient to trigger complete preemption.

Similarly, the mere existence of a grievance/arbitration procedure in a CBA is not enough to lead to complete preemption under the LMRA. Opp'n at 8-9. It is true that "[u]nder a collective bargaining agreement like the ones in these cases, an employee usually cannot succeed *in a suit under § 301* to vindicate personal contract-based rights unless the contractual grievance-arbitration procedure is invoked on her behalf or on behalf of a group of employees of which she is part." *Kobold*, 832 F.3d at 1034 (emphasis added). However, this is not a suit under section 301; Plaintiff's claims are state law claims. The holding made by the Court in *Kobold* was not based on the grievance procedure like Defendant seemingly suggests − the court based its holding on the fact that the CBA had to be interpreted. *Id.* at 1036.

Thus, the Court would find Plaintiff's wage and overtime claims are not completely preempted by section 301 under the second *Burnside* inquiry. The Court would extend the same reasoning to Plaintiff's second, third, and fourth claims because they are derivative of the Plaintiff's wage and overtime claims.

8

2. <u>Termination-Based Claims</u>

Plaintiff argues that her wrongful termination claim and her claim for violation of California Labor Code § 1102.5 are based upon rights conferred independent of the CBA and can also be resolved without interpretation of the CBA. MTR at 5; Reply at 5. Defendant responds that Plaintiff's sixth and seventh claims are completely preempted by section 301 under the second *Burnside* inquiry for the same reasons discussed above. As to these claims, Defendant points to the just cause provisions in Article I, Section 3, and the grievance process and binding arbitration provisions in Article XI, Sections 1-4. Opp'n at 11-12. While the Plaintiff relies on a district court case and two other Ninth Circuit cases,[2] the Court's own research indicates that the law as to section 301 preemption for wrongful termination claims is well-established, and fits within the same principles outlined in *Burnside*. *See Paige v. Kaiser Co.*, 826 F.3d 857, 863 (9th Cir. 1987) (holding the plaintiff's claim for wrongful termination of public policy was not completely preempted by section 301 because the claim was not intertwined with or substantially dependent upon consideration of the terms of the CBA); *Deschene v. Pinole Point Steel Co.*, 76 Cal.App.4th 33, 42 (1999) (holding the wrongful termination was not preempted by section 301 because "the issues before the court in this case, as in *Lingle*, are factual ones which could be resolved without the necessity of construing the provisions of the CBA and therefore this state law claim is independent of the CBA for the purposes of the LMRA section 301 preemption").

Likewise, in *Lingle*, 486 U.S. at 408, the Supreme Court held the retaliatory discharge claim was not preempted by section 301 because "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *See Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 801 (7th Cir. 2013) (holding a retaliatory discharge claim under Indiana law was not preempted by section 301 because "[i]t is not ordinarily necessary to consult the terms of a labor contract to know whether an employee was discharged, nor would the contract be required to explain why the discharge occurred"). The same is true here, or at least Defendant has not convincingly demonstrated otherwise.

---

[2] Plaintiff cites *to Emrick v. Fujitec Am., Inc.*, No. C-04-04514 MJJ, 2005 WL 162235, *8 (N.D. Cal. Jan. 24, 2005), *Local 246 Util., Workers Union v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996), and *Wren v. Stetten Constr. Co.*, 654 F.2d 529, 535 (9th Cir. 1981). The Court finds the cases it cites above more persuasive than those relied on by Plaintiff for determining whether the termination-based claims are completely preempted by section 301 under the second *Burnside* inquiry.

9

Defendant offers no new arguments as to why Plaintiff's sixth and seventh claims are completely preempted by section 301 under the second *Burnside* inquiry, again only citing to the CBA but failing to argue why the Court has to *interpret* the CBA to resolve those claims. Therefore, the Court would find that Plaintiff's sixth and seventh claims are not completely preempted by section 301 under the second *Burnside* inquiry because neither claim is substantially dependent upon consideration of the terms of the CBA and both claims would require an inquiry into the parties' actions, not interpretation of terms in the CBA.

      3. Costs and Attorneys' Fees

In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), the Supreme Court held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." The Court further explained that "[i]n applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

Plaintiff argues that a finding of bad faith or frivolousness is not a prerequisite to an award of fees under section 1447(c). MTR at 6; Reply at 5. Whether or not the Court would agree with that proposition, it does not believe Plaintiff has satisfied the *Martin* standard here. Plaintiff further argues for fees on the theory that because the Court has discretion it should exercise it here. Again, the Court would decline to award fees under section 1477(c) because although Plaintiff argues that the law establishes Plaintiff's claims are not preempted by the LMRA and the Court arrives at that same conclusion, the Court would find there are no "unusual circumstances" present here that justify awarding costs and attorneys' fees outside of the traditional standard *Martin* recognizes.

## III. Conclusion

For the reasons stated above, the Court would **GRANT** Plaintiff's MTR to San Bernardino County Superior Court. However, the court would **DENY** Plaintiff's request for costs and attorneys' fees.